**In re Jose A. RODRIGUEZ, Debtor.**

**Justin P. HAVEE, Trustee, Plaintiff,**

v.

**Jose A. RODRIGUEZ, Rafaela M. Rodriguez and Arimar Construction, Inc., Defendants.**

**Bankruptcy No. 81–00293–BKC–JAG.**

**Adv. No. 81–0501–BKC–JAG–A.**

United States Bankruptcy Court, S.D. Florida.

June 9, 1982.

Steven H. Friedman, Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for plaintiff.

William M. Manker, Miami, Fla., for debtor-defendant.

Justin P. Havee, Miami, Fla., trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary complaint was filed by the trustee against the debtor, Jose A. Rodriguez, the debtor's wife and the debtor's

closely held corporation, Arimar Construction, Inc. The trustee asserts that the contribution of personal funds of the debtor to the corporation was a fraudulent conveyance, and that the subsequent conveyance to the debtor and his wife of a residence owned by the corporation was a void conveyance. The trustee asserts that the latter claim is made in the form of a derivative action against the corporation in the trustee's capacity as the present sole stockholder of the corporation.

Prior to April, 1979, the debtor and his wife owned a home in Coral Springs which they sold at that time, living in rental property until June, 1980. At all times pertinent to this lawsuit, Rodriguez was the sole shareholder of Arimar, and he and his wife were officers. Arimar had built the home in Coral Springs and may have built one other home, but was not very active. It was dissolved at one time, but was reinstated in August, 1979 (Defendant's Exhibit No. 1).

The proceeds from the sale of the Coral Springs home were used for the family's living expenses and debts. Some were contributed to Arimar, without any direct additional consideration from the corporation to the debtor. The debtor worked as a realtor and also added his commissions, or part of them, to the Arimar bank account. During the year prior to the filing in bankruptcy, the debtor contributed at least $13,155.29 to Arimar. However, during this time the debtor and his wife used the Arimar checking account as if it were their personal account, and paid many personal expenses, such as utilities, medical bills and moving expenses from this account (Plaintiff's Exhibit L). The corporation and the Rodriguezes each filed separate tax returns (Plaintiff's Exhibits N, O, Q and S).

In 1980 the corporation built the residence which is the subject of this adversary proceeding. Rodriguez personally had a contract to purchase several lots. In 1979 Arimar purchased one or two of them and constructed the house. A construction loan was obtained from Biscayne Federal Savings and Loan in December, 1979 by Arimar (Plaintiff's Composite Exhibit F). It was a permanent mortgage which became a lien on the residence upon completion of the house.

Arimar also borrowed money from Barnett Bank for the purchase of the land (Plaintiff's Composite Exhibits M and W). Rodriguez testified that he had the intention of building three or four houses, including his own. Navarro, the Barnett officer who handled the loan application, testified that Rodriguez requested a loan, saying he had an option to buy four lots and had sufficient money to buy one lot but wanted to buy more because there would be more profit from constructing more homes. This loan was not secured by the real property because that was used to secure the Biscayne Federal construction loan (Plaintiff's Exhibit K). Therefore, Navarro did not concern himself with whether or not the Barnett loan was actually used to purchase the land, although Rodriguez later told him that he had been unable to purchase all four lots. Barnett did require a personal guaranty from Rodriguez (Plaintiff's Exhibit W). The debtor testified that the Barnett proceeds were "not essentially" used to buy the real estate in question, but that some of it was so used. Although interest was paid on it, the principal of that loan has never been repaid.

In June, 1980 the Rodriguezes moved into the newly constructed home. Navarro testified that the debtor told him that the house was hard to sell in the market existing at that time. In December, 1980 Arimar gave a quitclaim deed to the property to the debtor and his wife, (Plaintiff's Exhibit H) and the mortgage was assumed by them. Rodriguez testified that the house was transferred at that time because they wanted to take advantage of the Florida homestead tax exemption. While the family had been living there prior to that time the mortgage payments had been made by Arimar. The debtor's voluntary petition in bankruptcy was filed on March 2, 1981 (Plaintiff's Exhibit G).

The trustee is the sole shareholder of Arimar. Although the trustee's stock own-

**14**

ership is subsequent to the acts complained of, it devolved on him by operation of law, and the trustee is attempting to rectify acts of the debtor which failed to distinguish between his own business affairs and those of the corporation. Under the circumstances, the substance of FRCP 23.1, (Derivative Actions of Shareholders) made applicable by B.R. 723.1, and the requirements of § 607.147, Florida Statutes, are satisfied.

 The court deems this cause of action to be one to impress a trust on the real property conveyed to the Rodriguezes. Where one through fraud, abuse of confidence, or other questionable means gains property which in equity or good conscience he should not be permitted to retain, equity will raise a constructive trust. *Hallam v. Gladman,* 132 So.2d 198 (Fla.App.1961). See also *Armenian Hotel Owners, Inc. v. Kulhanjian,* 96 So.2d 146 (Fla.1957) where the person who received the principal asset of a corporation through a fraudulent conspiracy with directors of the corporation was held to be a constructive trustee of the property, in a suit by a shareholder. The debtor here used his position as director and officer of Arimar to benefit himself personally at the expense of the corporation. A person will not be permitted to do business in corporate form and obtain all the benefits thereof, and then ignore the corporate form when it no longer suits his purposes. *Marks v. Green,* 122 So.2d 491 (Fla.App. 1960). Therefore, this court will impress a trust in favor of Arimar Construction, Inc. on the real property conveyed by it to the debtor and his wife.

The debtor asserts that his present ownership of the home and his claim of homestead exemption is a replacement for the homestead exemption he held on the house which was sold in 1979, and that the various intervening transfers cannot be attacked because they were simply part of the process of funneling proceeds out of one homestead into another. This court concludes otherwise. Although proceeds from the sale of a homestead may temporarily retain an exempt status under *Orange Brevard Plumbing v. La Croix,* 137 So.2d 201 (Fla.

1962), there are significant limitations on this rule. Here, the proceeds from the debtor's original homestead were so commingled with his income and the proceeds of loans received by Arimar, and so many months passed between receipt of the sale proceeds and reinvestment in a new home, that it is impossible for this court to conclude that the possible infusion of some proceeds from the first homestead protects the debtor's ownership and homestead status of the second home.

The debtor impliedly argues that his contributions of $13,155.29 were a loan to the corporation or partial consideration for the future conveyance of the residence, such that the debtor should have a lien in that amount on the residence. Such a lien, however, would now be an asset of the estate. An alternative ground for returning the value of $13,155.29 to the trustee (from the corporation) is plaintiff's fraudulent conveyance theory. While the debtor would not benefit in either case, the distinction may be material, depending on the debt structure and identity of the creditors of the corporation. The evidence certainly is not clear. However, the court concludes that it is sufficient to grant an equitable lien in favor of the trustee on the real property in the amount of $13,155.29. Thus, the house is to be returned to the corporation, but it will be encumbered by a lien which is directly an asset of the debtor's estate.

If the debtor has made post-petition mortgage payments he would have a claim against the corporation for them. However, the corporation has a post-petition claim against the debtor for rent. No evidence was presented regarding the reasonable value of the rental claim. Therefore, the parties are instructed to determine the relative values of mortgage payments made and rental which was not received. If the parties cannot reach an agreement, a hearing will be set down on that issue.

Pursuant to Bankruptcy Rule 921(a), a separate Final Judgment will be entered following the determination of mortgage and rental amounts.