[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-13733
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 23, 2007
THOMAS K. KAHN
CLERK

D. C. Docket Nos.
06-00114-CV-T-17MSS
BK:03-11047-8

In Re: ELECTRIC MACHINERY ENTERPRISES, INC.,

Debtor.

_____

THE WHITING-TURNER CONTRACTING COMPANY,
UNITED STATES FIDELITY AND GUARANTY COMPANY,

Plaintiffs-Appellants,

versus

ELECTRIC MACHINERY ENTERPRISES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 23, 2007)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

WILSON, Circuit Judge:

This is an interlocutory appeal in a bankruptcy case. We find that the district court erred when it upheld a bankruptcy court's denial of a motion to compel arbitration.

BACKGROUND

The Whiting-Turner Contracting Company ("Whiting-Turner") was the general contractor on the construction of certain improvements at Universal City Development Partners' ("UCDP") theme park known as "Seuss Landing."[1] Electric Machinery Enterprises, Inc. ("EME") entered into a subcontract with Whiting-Turner and agreed to provide electrical work on the project. During the course of the work, Whiting-Turner suffered scheduling delays that impacted the completion of the work. UCDP refused to grant Whiting-Turner any contract time extensions for excusable delays; therefore, both Whiting-Turner and EME were forced to expend additional costs to accelerate the work. Whiting-Turner submitted an amended claim to UCDP for these additional costs. As part of the amended claim, Whiting-Turner included (as a "pass-through" claim) the claimed

[1]United States Fidelity and Guaranty Company ("USF&G"), as the surety, issued the performance bond for the Seuss Landing project. USF&G and Whiting-Turner are the appellants in this case. For simplicity, we refer to appellants jointly throughout as "Whiting-Turner."

additional costs submitted by EME in the amount of $5,001,644. Whiting-Turner also sought payment for additional change work that UCDP had directed Whiting-Turner and thereby EME to perform. The total amount that Whiting-Turner allocated to EME in its claim to UCDP was $6,116,467.

While Whiting-Turner was pursing these claims against UCDP, Whiting-Turner and EME entered into a Tolling Agreement, which tolled the applicable statute of limitations with respect to an action by EME against Whiting-Turner. The Tolling Agreement also acknowledged that during the course of the project, EME had incurred additional costs for change work and acceleration of contract performance. The Tolling Agreement stated that Whiting-Turner had submitted EME's claimed costs as part of Whiting-Turner's claims to UCDP, and Whiting-Turner was continuing to exhaust both Whiting-Turner's and EME's claims with UCDP.In the Tolling Agreement, Whiting-Turner and EME agreed "that any issues, claims or defenses between them shall be resolved by binding arbitration under the Construction Industry Rules of the American Arbitration Association and judgment shall be entered upon any award in such proceedings."

In June 2004, Whiting-Turner entered into a settlement agreement with UCDP in which UCDP paid Whiting-Turner $9,600,000. Following the settlement, Whiting-Turner informed EME that based on the prior payments made

3

to EME, Whiting-Turner considered its subcontract with EME paid in full. Both before and during the Tolling Agreement, Whiting-Turner had previously paid EME $1,845,451.

In May 2003, EME had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida. After Whiting-Turner settled with UCDP, EME filed an adversary proceeding in bankruptcy court against Whiting-Turner alleging that Whiting-Turner owes EME $5,081,286 in principal and $2,328,423 in accrued interest pursuant to a subcontract agreement between the parties. In its complaint, EME claims that the suit is for "turnover" property of the estate. Furthermore, EME claims that Whiting-Turner breached their contract and owed payment to EME based on a payment bond issued by Whiting-Turner.

EME moved for summary judgment, asserting that Whiting-Turner has a duty to "turn over" the undisputed amount of money that it owes EME. Specifically, EME claimed that it is owed a percentage of the settlement proceeds that UCDP paid to Whiting-Turner. Whiting-Turner's initial cumulative claim against UCDP was for approximately $21 million, which included EME's claim of approximately $6.2 million. EME stated that this $6.2 million represented 29% of Whiting-Turner's cumulative claim. Therefore, EME claimed that it should receive 29% of the $9,600,000 Whiting-Turner received as a settlement, which is

approximately $2,815,400. Whiting-Turner responded that during the course of the UCDP litigation, it learned that EME's cost claim was substantially overstated and unsupported by EME's own job cost records, and therefore, it had paid EME in full. Also in response to EME's claim, Whiting-Turner filed a motion to compel arbitration. The bankruptcy court held a hearing on both motions.

The bankruptcy court denied EME's motion for summary judgment and found that this case is not a "turnover" action because it involves a disputed and unliquidated claim. The bankruptcy court also found that this case presents a constructive trust situation, because Whiting-Turner collected money in settlement for itself and for EME, and if Whiting-Turner does not distribute the proportion of the settlement owed to EME, Whiting-Turner will be unjustly enriched. However, the bankruptcy court acknowledged that the amount of money that Whiting-Turner owes to EME is a "hotly disputed" factual issue. Having determined that a constructive trust existed, the bankruptcy court determined that it had jurisdiction over the *res* of the constructive trust, and that the determination of the amount of res in the constructive trust was a "core" bankruptcy proceeding. Therefore, the bankruptcy court found that arbitration under these circumstances was not appropriate and denied Whiting-Turner's motion to compel arbitration. The district court affirmed, and Whiting-Turner appealed.

STANDARD OF REVIEW

We independently examine the factual and legal determinations of the bankruptcy court under the same standards as the district court. *Barnett Dodge Chrysler Plymouth Inc. v. Cranshaw (In re Issac Leaseco, Inc.)*, 389 F.3d 1205, 1209 (11th Cir. 2004). We review legal determinations *de novo. Securities Groups v. Barnett (In re Monetary Group),* 2 F.3d 1098, 1103 (11th Cir. 1993). We review the factual findings of the bankruptcy court for clear error. *Id.*

DISCUSSION

A.      Legal Standard for the Enforcement of a Valid Arbitration Agreement

The parties do not dispute that they entered into a valid arbitration agreement to resolve any and all claims or issues between them. The Federal Arbitration Act ("FAA") provides, in pertinent part, that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a federal policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987). However, "[l]ike any statutory directive the Arbitration Act's mandate may be overridden by a contrary congressional command." *Id.* "Thus, unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim, a

6

party is bound by its agreement to arbitrate." *Davis v. Southern Energy Homes, Inc.,* 305 F.3d 1268, 1273 (11th Cir. 2002). The party opposing arbitration has the burden of proving "that Congress intended to preclude a waiver of a judicial remedies for [the particular claim] at issue." *McMahon,* 482 U.S. at 227, 107 S. Ct. at 2337.

In *McMahon,* the United States Supreme Court promulgated a three factor test in order to determine Congress' intent: "(1) the text of the statute; (2) its legislative history; and (3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists." *Davis,* 305 F.3d at 1273 (alteration in original) (quoting *McMahon,* 482 U.S. at 227, 107 S. Ct. at 2338). In applying the *McMahon* factors, "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 1652, 114 L. Ed. 2d 26 (1991). Applying the *McMahon* factors to the Bankruptcy Code, we find no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code. *See Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d Cir. 2006) (finding no evidence of such an intent in the statutory text or legislative history of the bankruptcy code). Therefore, we look to the third factor of the *McMahon* test and

examine whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code.

B.      Analysis

The bankruptcy court found that the determination of the *res* of the constructive trust was a core proceeding over which the bankruptcy court had exclusive jurisdiction.  The bankruptcy court relied on the United States Supreme Court's decision in *Tennessee Student Assistance Corp. v. Hood,* 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004), for the proposition that "[a] bankruptcy court's *in rem* jurisdiction permits it to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question.'" *Id.* at 448, 124 S. Ct. at 1911 (second alteration in original).  However, whether or not the bankruptcy court has jurisdiction, even exclusive jurisdiction, over a matter is a separate question from whether enforcing a valid arbitration agreement would pose an inherent conflict with the underlying purposes of the Bankruptcy Code.  *See McMahon,* 482 U.S. at 227-28, 107 S. Ct. at 2338-39 (finding that the plaintiffs' claim that the defendant violated § 10(b) of the Securities Exchange Act of 1934 was subject to arbitration even though district courts have exclusive jurisdiction over such violations).  Therefore, the bankruptcy court's finding that it had jurisdiction over the matter does not end our inquiry, for a finding of jurisdiction

8

does not in itself demonstrate that the FAA inherently conflicts with the Bankruptcy Code.

Courts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156-57 (3d Cir. 1989). In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding. *See Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 166 (2d Cir. 2000). However, even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum),* 118 F.3d 1056, 1067 (5th Cir. 1997). As explained below, we find that the proceeding in this case is not a core proceeding. Moreover, and even if it is a core proceeding, there is no evidence that arbitrating EME's claim against Whiting-Turner would inherently conflict with the underlying purposes of the Bankruptcy Code. Therefore, the dispute between EME and Whiting-Turner is subject to arbitration under the terms of the arbitration agreement.

9

The Bankruptcy Code provides a non-exclusive list of core proceedings. *See* 28 U.S.C. § 157(b)(2)(A)-(P). The proceeding in this case does not fall within any of the listed proceedings. However, since the list is non-exhaustive, we must inquire as to the nature of a core verus a non-core proceeding. In *In re Toledo*, we stated that "'[i]f the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding.'" *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*,170 F.3d 1340, 1348 (11th Cir. 1999) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). A proceeding is also considered core "'[i]f the proceeding is one that would arise only in bankruptcy.'" *Id.* A proceeding is not core "'[if] the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy.'" *Id.*

In this case, the bankruptcy court held that the determination of the *res* of a constructive trust is a core proceeding. The district court, in affirming the bankruptcy court, cited to *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396 (4th Cir. 1992), for the proposition that the finding of a constructive trust and the proper distribution of the *res* of that trust are core proceedings. However, *In re Johnson* is distinguishable.

In *In re Johnson*, the debtor filed bankruptcy following the collapse of an illegal pyramid scheme that the debtor had perpetrated. 960 F.2d at 398. The

10

bankruptcy court permitted a class of plaintiffs to bring a declaratory suit seeking judgment that the bulk of the debtor's estate should be held in constructive trust. The bankruptcy court determined that the bulk of the funds in the debtor's estate were to be held in constructive trust for the defrauded investors. The bankruptcy court then determined the proper distribution of the funds in the trust to the class of plaintiffs. The appellants, two of the class plaintiffs, objected. While they did not object to the bankruptcy court's determination that the funds were to be held in a constructive trust, they argued that the bankruptcy court was without jurisdiction to determine who was entitled to the distribution of the funds. In affirming the district court's affirmance of the bankruptcy court, the Fourth Circuit noted that "it was necessary for the bankruptcy court to determine the proper beneficiaries [of the trust] concurrent with its finding of a constructive trust." *Id.* at 402. The court stated that "the only proper forum for determining whether assets held by a debtor are held in constructive trust is the bankruptcy court . . . . [A] determination of the proper distribution of that trust [is] intimately tied to the traditional bankruptcy functions and estate, and therefore, [it is a] core matter within the clear jurisdiction of the bankruptcy court." *Id.*

In contrast, in this case, the disputed assets are not held by the debtor. Rather, they are held by a third party (Whiting-Turner), and the proceeding

11

between EME and Whiting-Turner does not involve a claim by a bankruptcy creditor against funds held by the bankruptcy debtor's estate. *In re Johnson* involved creditors who made claims against the debtor's estate in bankruptcy court for liquidation of assets held by the debtor, a proceeding which the Fourth Circuit found to be "core." Our case does not present the same type of proceeding.

EME argues that *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574 (2d Cir. 1983), supports the proposition that a bankruptcy court can exercise jurisdiction over a constructive trust with assets held by a third party, and such a proceeding is a core proceeding. However, we disagree with EME's interpretation of *In re Kaiser*. In that case, the bankruptcy court found that the debtor husband had made a fraudulent transfer of property to his wife in order to hinder, delay, or defraud his creditors. The bankruptcy court imposed a constructive trust upon the property that the debtor had fraudulently transferred to his wife. The debtor argued that the bankruptcy court did not have the authority to issue a final order imposing the constructive trust, because it was only a "related proceeding." *Id.* at 1581. While the Second Circuit in *In re Kaiser* disagreed with the appellant-debtor, it explained that "[i]t is certainly true that state courts commonly impose constructive trusts. What appellant ignores, however is that this action was brought as a result of his fraudulent transfers in light of the bankruptcy laws. . . . [therefore], federal law

12

provides the *right* upon which the remedy of the constructive trust sought here is based." As such, the proceeding was "core." *Id.* at 1582. Further supporting the Second Circuit's holding is the fact that proceedings to determine, avoid, or recover fraudulent conveyances are specifically listed as core proceedings under 28 U.S.C. § 157(b)(2)(H). Unlike *In re Kaiser*, this case does not involve a debtor's fraudulent conveyance of property to a third party in order to circumvent the bankruptcy laws.

Accordingly, we hold that the bankruptcy court erred in finding that a determination of how much money, if any, Whiting-Turner owes EME is a core proceeding.[2] A determination of whether Whiting-Turner owes EME money under their contractual agreement does not involve a right created by federal bankruptcy law, and it is not a proceeding that would arise only in bankruptcy. *See In re Toledo,* 170 F.3d at 1348. EME could have bought this claim against Whiting-Turner irrespective of whether EME had filed for bankruptcy. EME's claim against Whiting-Turner does not involve the traditional purpose of the bankruptcy court – modifying the rights of creditors who make claims against the bankruptcy debtor's estate. *See In re Semel & Co.*, 285 F. Supp. 536, 541 (D. N.J.

---

[2]Since we find that the bankruptcy court erred in finding that this was a core proceeding, and therefore should have directed the parties to arbitration, we make no finding as to whether the bankruptcy court properly concluded that a constructive trust existed.

1968) ("[T]he purpose of bankruptcy legislation from its inception in the last century down to the present day was and is the reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently."); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 851 (Bankr. S.D.N.Y. 1989) (same). While the determination of whether Whiting-Tuner actually owes EME part of the settlement proceeds that Whiting-Turner received from UCDP could affect EME's estate, actions that are merely related to a bankruptcy case are non-core proceedings. *See* 28 U.S.C. § 157(c)(1). Therefore, because EME's claim against Whiting-Turner is only related to EME's bankruptcy, it is non-core and subject to arbitration.

Furthermore, even if we were to find that EME's claim against Whiting-Turner constitutes a core proceeding, we find that EME did not sustain its burden under *McMahon* to demonstrate that Congress intended to limit or prohibit waiver of a judicial forum for the type of claim that EME brought against Whiting-Turner. *See McMahon,* 482 U.S. at 227, 107 S. Ct. at 2338. The bankruptcy court found that the determination of the *res* in a constructive trust was a core proceeding and that arbitration under these circumstances was inappropriate. However, the bankruptcy court did not assess whether enforcing the parties' arbitration agreement would inherently conflict with the underlying purposes of

14

the Bankruptcy Code. Only if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the arbitration agreement. *See In re National Gypsum*, 118 F.3d at 1067. We find no evidence in the record to suggest that sending EME's claim against Whiting-Turner to arbitration, as the parties agreed to do, would inherently conflict with the Bankruptcy Code, and EME has failed to demonstrate otherwise. Therefore, even if this dispute is in fact core, it is still subject to arbitration.

## CONCLUSION

The bankruptcy court erred in denying Whiting-Turner's motion to compel arbitration. Accordingly, we reverse the judgment of the district court, which denied Whiting-Turner's bankruptcy appeal, and remand this case to the district court for remand to the bankruptcy court with instructions to compel the parties to arbitrate in accordance with the terms of their arbitration agreement.

**REVERSED and REMANDED.**