### In re COFFEE CUPBOARD, INC., Debtor.

### Bankruptcy No. 181–13520.

United States Bankruptcy Court, E.D. New York.

Sept. 4, 1990.

See also, D.C., 119 B.R. 14.

**198**

Sherman, Citron & Karasik, P.C., New York City, by Howard Karasik, for debtor.

Thomas F. Farley, P.C., New York City, pro se.

Jerome Dorfman, Woodbury, N.Y., for Bernard Coven.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

Thomas Farley ("Farley") and Bernard Coven ("Coven") (also referred to as "The Petitioners"), creditors of Coffee Cupboard, Inc. (hereinafter "Coffee Cupboard" or "The Debtor"), moved to reopen this closed Chapter 11 case and convert it to a Chapter 7 case. The grounds in support of the motion are threefold: first, that the Debtor was in material default in the consummation of its confirmed plan and unable to effect substantial consummation of its confirmed plan; second, the Debtor conveyed all of its customer lists, equipment and inventory without leave of court or notice to creditors in violation of Section 363(b) of the Code and Bankruptcy Rule 6004; and, third, the Debtor fraudulently conveyed Stock owned by the Debtor. For the reasons set forth below, this court holds that

this case be converted from Chapter 11 to Chapter 7 on the grounds that the Debtor has failed to substantially consummate the plan and has permitted a material default with respect to the plan.[1]

## FACTS

Coffee Cupboard was in the business of establishing coffee dispensing stations and providing them the coffee, coffee making equipment and other related supplies. Mr. Edward Weiss ("Weiss") was its President and sole Director. Allvend Industries (hereinafter "Allvend"), a corporation controlled by Weiss, was the sole shareholder of Coffee Cupboard. Coffee Cupboard commenced its voluntary Chapter 11 case on November 16, 1981. Farley filed a claim against the Debtor in the sum of $2,500 together with a participation of one half of a $22,000 claim filed on behalf of Broder & Farley, a dissolved law partnership in which Farley was a partner. Coven's claim was filed in the sum of $18,000. The Debtor never objected to the claims and they were deemed allowed as filed under § 502 of the Bankruptcy Code. Farley performed legal services on behalf of the Debtor between 1984 and 1989. Coven had also acted as the attorney for the Debtor and Weiss from time to time in many ventures involving Weiss for several years until he was disbarred.

The Debtor's plan of reorganization was confirmed on February 13, 1984. It provided, *inter alia*, that its unsecured creditors were to receive 80% of their allowed claims over a period of four years. The indebtedness to each unsecured creditor was to be evidenced by a promissory note reciting the installment payout terms. The plan was to be funded through the business operations of Coffee Cupboard and from funds the parent corporation, Allvend, might raise in a secondary issuance of its stock in the open market. Testimony was adduced at

---

1. Section 1112(b) of the Bankruptcy Code states in pertinent part:

    [O]n request of a party in interest ... after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter whichever is in the best interest of creditors and the estate, for cause, including—

    (7) inability to effectuate substantial consummation of a confirmed plan;

    (8) material default by the debtor with respect to a confirmed plan;

the hearings on the motion to the effect that neither Allvend nor its successor Kings Oil Co., Ltd. were able to effectuate the secondary offering. The plan further provided for the retention of jurisdiction by this court and a restriction against the Debtor transferring all or substantially all of its assets until payments under the plan had been completed. A final decree which recited that the plan was substantially consummated and directing that the estate be closed was entered November 5, 1986.

During the course of the hearings on the motion which consumed many days, it was established that in June of 1984, the Debtor Conveyed 6,250,000 shares of stock in Coffee Hutch, Inc, formerly known as P.L.S. Corporation ("The Stock"), to Mr. Weiss's two sons, Leonard and Mitchell. The transfer was alleged to have been made in consideration of a promissory note, executed and delivered by them to the Debtor in the amount of $64,250. In September of 1984, the note was cancelled in exchange for unspecified services rendered by the transferees. In May of 1988 the shares were reissued to Leonard and Mitchell Weiss. This transaction was not brought to the attention of the creditors. More importantly, the stock was not listed in the schedules of assets of the Debtor filed in this case, nor was the existence or ownership of the Stock set forth in the disclosure statement which accompanied the confirmed plan.

The Petitioners testified that they only became aware of the transfer of the Stock in early 1989 through a prospectus, circulated in 1988, offering shares of stock in a corporation known as Bazaar De la Cuisine Internationale, Inc. ("Bazaar"). The Petitioners claim that the name of Coffee Hutch, Inc. had been changed to Bazaar to conceal the transfer, and that the stock which was the subject of the offer was the stock transferred to Weiss's sons.

It was further established during the hearings that in January 1985 the Debtor entered into an agreement with an entity known as Hembley Corporation, later called Holiday House International, Inc. (hereinafter "Holiday House"). The agreement provided that in exchange for the Debtor turning over its customer accounts, inventories and accounts receivable, Holiday House would assume and discharge the Debtor's obligations under the Debtor's plan. This agreement also was not brought to the attention of the creditors of the Debtor.

On March 29, 1989, approximately five years after the entry of the final decree, the Petitioners moved to reopen the Chapter 11 case and convert the case to one under Chapter 7 of the Bankruptcy Code.

At that time and for several months thereafter, until June of 1989, I was hospitalized and Honorable Edward J. Ryan who had been designated to handle my matters in my absence, entertained the motion. He authorized the Petitioners to conduct examinations under Bankruptcy Rule 2004. Upon my return, my initial involvement with the motion and the matter before the court arose out of objections to the examinations. Upon reviewing the file I observed that the motion to reopen the case had never been granted and that no order for such relief had been entered. In the interests of justice, I forthwith granted the motion to reopen the case in order that the issues relative to the motion to convert be considered. However, in light of the fact that the Rule 2004 examinations had commenced absent the actual reopening of the case, I directed that evidentiary hearings go forward with respect to the proof in support of the motion to convert. It was my intention to have evidentiary hearings conducted in my presence rather than Rule 2004 examinations which can be held in my absence.

I further held that the portion of the motion seeking conversion because of alleged fraudulent acts committed more than 180 days after consummation of the plan was barred from consideration in light of the provisions of § 1144 of the Bankruptcy Code.[2] The Petitioners appealed from my

---

**2.** Section 1144 of the Bankruptcy Code states in pertinent part:

On request of a party in interest at any time before 180 days after the date of the entry of

decision on the grounds that the alleged fraudulent acts constituted grounds to convert. In the course of preparing the within opinion I learned that the District Court had decided that the alleged fraudulent acts may be deemed to constitute "cause" to convert under § 1112(b) (*See* Opinion of Honorable Thomas C. Platt, Jr., Chief Judge E.D.N.Y. 8/9/90 c.v.—3788(TCP)) 119 B.R. 14. The District Court further remanded that matter back to me for the purpose of determining whether the case should be converted on the grounds of fraud. As hereinabove appears, there is no need to examine into the issue of fraud for the purpose of converting this case inasmuch as I hold that it should be converted on the grounds that the Debtor has failed to substantially consummate the plan as well as to permit a material default with respect to the plan.

### ANALYSIS

This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) involving the conversion of the Debtor's case from Chapter 11 to Chapter 7.

### ISSUES

1. Is the motion barred by laches?

2. Was there substantial consummation of the plan or a material default in the performance of the plan?

#### 1. *Laches*

■ The Petitioners claim they waited five years to move to reopen and convert this case because it was not until early 1989 that they became aware of facts which justify the instant motion. Specifically, they contend that it was not until early 1989 that they became aware through the Bazaar Stock prospectus, that the Stock had been sold.

Considering the close former working relationship between the Debtor and the Peti-

the order of confirmation, and after notice and a hearing, the court may revoke such

tioners and the fact that Farley was engaged in legal work for the Debtor while its Chapter 11 case was pending, it is unlikely that the Petitioners were completely unaware of this transaction. However, the Petitioners' delay in bringing this proceeding does not support a defense on the basis of laches.

"Laches is an equitable doctrine which may be applied to deny relief to a party whose 'unconscionable delay' in enforcing his rights has prejudiced the party against whom the claim is asserted." *United States v. Excellair, Inc.*, 637 F.Supp. 1377, 1385 (D.Colo.1986) (cites omitted). "[I]n order to support a defense of laches, there must be a showing of both a lack of diligence by the party against whom the defense is asserted and prejudice to the defending party." *In re Badger Freightways, Inc.*, 106 B.R. 971 (N.D.Ill.1989) (cites omitted).

This court finds that there has been no showing that the Debtor in this action has been prejudiced in any way. Mere lapse of time is not cause to invoke the equitable remedy of laches. The Debtors defense of laches is therefore unavailing.

#### 2. *Substantial Consummation and Material Default*

Section 1101(2) defines substantial consummation as:

(A) Transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) Assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan;

(C) Commencement of distribution under the plan.

The statute is written in the conjunctive, thus all three elements must be met in order to reach a determination that the plan has been substantially consummated. *In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 303 (Bankr.W.D.Pa.1989).

order if and only if such order was procured by fraud.

■ The evidence adduced during the course of this proceeding leads this court to conclude that the Debtor failed to substantially consummate the plan and is in material default.

This court conducted full evidentiary hearings that consumed several days relative to the issue of substantial consummation and default. It was established that many individual creditors who had at one time maintained a close relationship with Weiss, accepted the stock of Kings Oil Co., Ltd., the successor of Allvend, in lieu and in satisfaction of their respective claims against the Debtor which had been allowed in this case. However, the Debtor failed to produce any proof of the payment or satisfaction of the claims of trade or other classes of creditors, including the claim of the State of New York for taxes, due from the Debtor and which it had filed in this case. The Debtor sought to place the burden of proving the failure of payment on the Petitioners. That burden should have been borne by the Debtor who failed to produce any such payments. It even failed to prove that it had distributed to the creditors the promissory notes called for in the plan.

The Debtor alleged during the course of hearings that Farley had accepted Allvend Stock in payment of his claim. However, Farley countered that contention by stating that his receipt of the Allvend Stock was not in satisfaction of his claim against Coffee Cupboard. It appears that in addition to such claim, he had filed a claim against Allvend in the Chapter 11 proceedings which it had filed subsequent to the commencement of the within Debtor's Chapter 11 case. Farley has argued that the stock in Allvend which he had received had been issued pursuant to Allvend's plan of reorganization and was only in satisfaction of his claim filed in that case.

In support of its contention that all of the creditors were paid in accordance with the terms of the plan, the Debtor produced the agreement which it had entered into with Holiday House which has previously been noted. That agreement provided that in exchange for the Debtor turning over its assets to it, Holiday House would assume and discharge the Debtor's obligations under the plan. Although the Debtor produced checks given by Allvend to Holiday House allegedly for working capital and for payment of the debts of Coffee Cupboard, it failed to prove that Holiday House had paid the claims of the creditors. It was further established during the hearings that Holiday House had itself filed a petition for relief under Chapter 11 and that the schedules of its liabilities filed in that case did not list any of the Debtor's creditors as creditors of Holiday House. It was further established that at no time did Holiday House pay anything to the Debtor's creditors, nor did the creditors of the Debtor file claims in the Holiday House proceedings. As a matter of fact, Holiday House's Chapter 11 case was ultimately dismissed. Finally it was determined during the course of the hearing by virtue of the appearance of a representative of the State of New York, that no payment was made to it on account of a tax claim it filed in the Debtor's Chapter 11 case other than an application of an overpayment made in a prior tax period.

By reason of all of the foregoing, this court finds that there was a failure on the part of the Debtor to substantially consummate his plan and that there was a material default by the Debtor in the execution of that plan. The motion of the Petitioners to convert this case should be granted to the extent that it be converted to a Chapter 7 case in order to provide the trustee to be appointed in the superceding Chapter 7 case an opportunity to examine into the transfer of the Coffee Cupboard stock, the transfer of its assets to Holiday House, and to enforce whatever remedies there are in favor of the trustee.

Submit an Order in conformity with this opinion.