**In re Norman SCHULTZ, Debtor.**

**Neil H. Ackerman, Chapter 7 Trustee of the Estate of Norman Schultz, Plaintiff,**

v.

**Norman Schultz and Lisa Bomse, Defendants.**

**Bankruptcy No. 897–84900–478.
Adversary No. 898–8647–478.**

United States Bankruptcy Court, E.D. New York.

June 20, 2000.

---

Thaler & Gertler, LLP, Westbury, NY, for the Plaintiff/Trustee.

Ackerman & Gallipoli, LLC, Westbury, NY, for trustee.

Fischoff & Associates, Garden City, NY, for the Debtor/Defendants.

## DECISION ON THE GOODWILL AND GOING CONCERN VALUE OF ACCOUNTING PRACTICE RETAINED BY DEBTOR POST-PETITION

DOROTHY EISENBERG, Bankruptcy Judge.

Neil H. Ackerman, the Chapter 7 trustee (the "Trustee" or the "Plaintiff") of the Estate of Norman Schultz (the "Debtor"), commenced an adversary proceeding against the Debtor and his wife, Lisa Bomse (collectively the "Defendants"), alleging five (5) causes of action, including (a) pursuant to 11 U.S.C. §§ 541 and 542, the turnover of $15,295 of Debtor's outstanding accounts receivable from his accounting practice as of the date of filing of the petition (the "Petition Date"), together with interest thereon, and the books, records, files and documents in the Debtor's possession, custody and control concerning the uncollected accounts receivable; (b) pursuant to 11 U.S.C. §§ 541 and 542, the turnover of a tax refund of $486 received by the Debtor after the Petition Date; (c) pursuant to 11 U.S.C. §§ 541 and 542, the turnover of $2,759.41 in the Debtor's bank account, which constitutes the non-exempt portion of funds in the account on the Petition Date; (d) pursuant to 11 U.S.C. § 548, the avoidance of a pre-petition transfer of $1,589 by the Debtor to the Internal Revenue Service and/or the New York State Department of Taxation and Finance in payment of the income tax obligations of defendant Lisa Bomse; and (e) pursuant to 11 U.S.C. §§ 541 and 542, the recovery of the estate's interest in the goodwill and going concern value of the

accounting practice which the Debtor operated as a sole proprietorship prior to the commencement of the Chapter 7 case and which he continued to operate as a sole proprietorship post-petition.

By Order dated September 9, 1999, the Court previously granted partial summary judgment in favor of the Trustee and against the defendant Norman Schultz in the amount of $11,422, representing the pre-petition accounts receivable collected by the Debtor, finding that those funds constituted property of the estate; directed the Debtor to turn over the books, records, files and documents of the accounting practice necessary for the Trustee to pursue the uncollected pre-petition accounts receivable; directed the Debtor to turn over to the Trustee the $486 tax refund received post-petition, finding that it was property of the estate; directed the Debtor to turnover to the Trustee $2,759.41, which constituted the non-exempt cash balance in the Debtor's bank account on the Petition Date. The Court declined to grant summary judgment on the issues of whether the Trustee was entitled to interest on the accounts receivable collected and unlawfully retained by the Debtor and whether the payment made by the Debtor to the taxing authorities for the income tax obligation of defendant Lisa Bomse constituted a fraudulent conveyance, finding that there were genuine issues of fact in dispute. Consequently, those matters were set down for trial. In addition, having held that the goodwill and going concern value of the accounting practice retained by defendant Norman Schultz after the Petition Date were assets of the estate, the Court also fixed a trial date for the evaluation thereof.

Therefore, the only issues before the Court at this time are: (1) whether the Trustee was entitled to interest on accounts receivable collected and unlawfully retained by the Debtor; (2) whether the payment made by the Debtor to the taxing authorities for the income tax obligation of Defendant Lisa Bomse constituted a fraud-ulent conveyance; and (3) whether the goodwill and going concern of the accounting practice retained by the Debtor after filing the petition were assets of the estate and, if so, the value thereof.

On November 15, 1999 and January 10, 2000, the Court conducted the trial. Upon consideration of all of the proceedings had herein, including without limitation the pleadings, motions, memoranda of law, Pre-Trial Statement, affidavits, trial transcripts and exhibits, and after hearing the testimony of Ira M. Spiegel, C.P.A., the Trustee's expert on valuation, the Debtor, the Trustee, and defendant Lisa Bomse, the Court has determined that (a) the Trustee is entitled to interest at the rate of nine (9%) percent per annum on the $11,422 of accounts receivable collected and wrongfully retained by the Debtor, such interest running from the date of collection of the said receivables to the date they were turned over to the Trustee; (b) the Trustee is entitled to recover for the benefit of the creditors of the estate the sum of $825.00, representing the amount of money paid by the Debtor to the taxing authorities which is actually attributable to the 1996 federal and state income tax obligation of defendant Lisa Bomse, plus interest at the rate of nine (9%) percent per annum from the Petition Date; and (c) the Trustee is entitled to judgment in the amount of $17,808, which represents the estate's interest in the goodwill and going concern value of the accounting practice operated by the Debtor as a sole proprietorship pre-petition, which he continued to appropriate without change. This decision constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Bankr.P. 7052.

## FINDINGS OF FACT

1. This case was commenced by the filing of a voluntary petition under Chapter 7 of the Bankruptcy Code on June 27, 1997, and Neil H. Ackerman was duly appointed as the Chapter 7 Trustee.

2. The Debtor is a certified public accountant who practiced from his home as a sole practitioner prior to the Petition Date and has retained his accounting practice uninterrupted by the pendency of this case.[1] He has been licensed as a certified public accountant for sixteen (16) years, servicing mostly individuals and small businesses.

3. The clients of the accounting practice were not pre-petition creditors of the Debtor and, thus, were not notified of this bankruptcy filing, and the Debtor continued the operation of his accounting practice as if he had not petitioned for bankruptcy relief. Therefore, the Debtor has had the benefit of the "goodwill" of his pre-petition practice.

4. The Trustee conducted the first meeting of creditors on August 13, 1997, at which time he examined the Debtor under oath, demanded the turnover of the accounts receivable of the accounting practice, and advised the Debtor that the Trustee's accountants, Stuart Fleischer Associates, would be contacting him concerning his accounting practice and the value thereof. By letter dated February 19, 1998, Trustee's accountant made a written demand for documents regarding the Debtor's accounting practice, including a listing of the client base as of the Petition Date, together with an indication of the hours worked and fees charged to them during the prior two years.

5. The Trustee commenced this adversary proceeding on November 16, 1998 by the filing of a complaint.

6. Defendant Norman Schultz is the Debtor, and Defendant Lisa Bomse is the wife of the Debtor. They were married in 1989 and have two young children. In addition, Debtor has two sons from his previous marriage. The eldest is twenty-five (25) years of age, and spends approximately five (5) hours per week performing services for Debtor's accounting practice. Debtor's son is not compensated for such services except for occasional gifts of clothing. It is not known exactly what services he provides, whether they are professional or clerical in nature.

7. Lisa Bomse is self-employed as a psychologist and also works from home. She presently earns approximately $50,000 per annum.

8. The Debtor and Lisa Bomse maintain separate checking accounts.

9. For tax year 1996, the Debtor and Lisa Bomse filed joint federal and state tax returns. The Debtor testified that he earned approximately $53,000 from his practice in 1996.[2] In April 1997, the Debtor made estimated tax payments from his separate bank account to the Internal Revenue Service in the amount of $2,000 and to the New York State Department of Taxation and Finance in the amount of $1,000, with respect to the 1996 joint tax obligations of himself and his wife. For that year, Lisa Bomse's federal income tax liability was $825, representing self-employment tax (Trial Exh. 1), and she had no income tax liability to New York State.

■ 10. The Debtor was insolvent in April 1997.[3]

1. For ten years ending August 1996, the Debtor was a partner in the accounting firm of Essenfeld, Schultz & Co. pursuant to an oral partnership agreement. *Essenfeld v. Schultz (In re Schultz)*, 239 B.R. 664, 669 (E.D.N.Y. 1999). From August 1996 to December 1996, the Debtor was a partner in the short-lived accounting firm of Bedell, Essenfeld & Schultz. On or about December 13, 1996, the Debtor left the partnership, retaining the clients which he usually serviced, and set up a practice as a sole practitioner from his home.

2. The Court notes that the Debtor took only $53,000 out of the practice in 1996 because he and Essenfeld were trying to pay certain partnership debts (Tr. 1/10/2000 Hrg. at 211–12), not necessarily the total sum he might have been entitled to.

3. In an avoidance action under 11 U.S.C. § 548 there is no presumption of insolvency of the debtor on and during the 90 days immediately preceding the filing of the petition as there is in an avoidance action under 11 U.S.C. § 547. *See In re Larry's Marineland*

11. The Debtor did not receive reasonably equivalent value for the transfer on behalf of his wife's 1996 income tax obligation, which was totally attributable to her self-employment as a psychologist.

12. The Trustee was not a party to the adversary proceeding commenced by Howard Essenfeld ("Essenfeld"), Debtor's former partner, against the Debtor (Adv.Pro. No. 897–8542), seeking a judgment of nondischargeability pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) and a denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (4)(A).[4] In that action, Essenfeld alleged, among other things, that the Debtor failed to list certain real property in his schedules in which he had a legal or equitable interest and, thus, should be denied a discharge. Since neither the parties nor the issues were identical in the earlier proceeding, the doctrines of collateral estoppel or "law of the case" are unavailable to the defendants in connection with the Trustee's fraudulent conveyance cause of action herein.

13. The Debtor admits that on the Petition Date he had outstanding accounts receivable in the sum of $15,295, of which $8,188 was collected by him post-petition. The Debtor further admits that the accounts receivable are property of the estate, but that, based on the advice of counsel, he refused to turn over to the Trustee the funds collected until the Trustee commenced this action (Pre–Trial Statement at ¶ 4(e), (f), (g) and (h)). During the pendency of this action, it was determined that the total amount of accounts receivable collected by the Debtor for pre-petition work was $11,442. Of this amount, $9,072 represented work that was billed prior to the Petition Date and $2,350 was for work in progress prior to the Petition Date, which was collected post-petition, and which was also property of the estate.

14. By Order dated January 9, 2000, the testimony of Joel Sinkin ("Sinkin"), whom the defendants offered at trial as an expert on the valuation of professional accounting practices, was excluded pursuant to Fed.R.Civ.P. 37(c)(1), as made applicable herein by Fed.R.Bankr.P. 7037, because Sinkin, without substantial justification, failed to comply with the requirements of Fed.R.Civ.P. 26(a), as made applicable herein by Fed.R.Bankr.P. 7026. By Order dated March 31, 2000, the Court denied the Trustee's request for reasonable attorneys' fees and costs incurred in connection with the Motion to Preclude the Sinkin testimony, without prejudice to counsel for the Trustee applying for such fees pursuant to 11 U.S.C. § 330.

15. To the extent that the earnings from the accounting practice operated by the Debtor post-petition are attributable to pre-petition invested capital, contacts, customer lists, continuity of location, phone number, client relationships, etc. (hereinafter the "goodwill" and "going concern value"), there is value for this bankruptcy estate, even though the goodwill and going concern value are attributable mainly to the Debtor's professional efforts.

---

*of Richmond, Inc.,* 166 B.R. 871, 873 (Bankr. E.D.Ky.1993). However, insolvency was established at trial by the Debtor's own testimony. The Debtor testified that in April 1997, he had over $200,000 in debt, as evidenced by certain promissory notes executed by him and co-obligor Howard Essenfeld, Debtor's former partner (Tr. 1/10/2000 Hrg., at 215). The Debtor further testified that in April 1997, as a result of the dissolution of the partnership, Essenfeld demanded that the Debtor immediately pay his portion of the indebtedness, but that he could not come up with the money (Tr. 1/10/2000 Hrg., at 215). As the Debtor himself testified, Essenfeld's pressure on the Debtor to pay off these obligations and Debtor's inability to raise the money in April 1997 precipitated the bankruptcy filing (Tr. 1/10/2000 Hrg., at 215–16).

**4.** The Trustee was a party to an adversary proceeding entitled *Neil H. Ackerman, as Trustee of the Estate of Norman Schultz v. Howard Essenfeld, Marc Essenfeld, Esse, Inc. and Esse, Inc. d/b/a/ AA Payroll Services of New York* (Adv.Pro. No. 899–8130–478), totally unrelated to the issues in this adversary proceeding, which was settled for $20,000 by Stipulation and Order dated December 27, 1999.

16. The appropriate date for valuation of the goodwill and going concern value of the Debtor's accounting practice is June 27, 1997, the Petition Date.

17. The Court takes judicial notice that the goodwill and going concern value of an accounting practice operated as a sole proprietorship and wihout a covenant not to compete has a *de minimus* market value to an unaffiliated purchaser, but may have a greater value to the Debtor.

18. Ira M. Spiegel, C.P.A. ("Spiegel"), of the accounting firm of Stuart Fleischer Associates, was qualified by the Court as an expert in the valuation of solo professional practices, and testified on behalf of the Trustee regarding the value to the estate of the goodwill and continuity of Debtor's accounting practice. Spiegel's testimony was considered by the Court for the purpose of determining what an accounting practitioner starting up at this location without contacts, client relationships or a customer list would be expected to earn as opposed to the Debtor, who started operations post-petition as a going concern.

19. All amounts billed and paid which consist of repeat business are relevant to the practices' continued goodwill, whether received from the preparation for small business or personal tax returns.

20. The Debtor retained approximately ninety (90%) percent of his pre-petition clients after the filing of the bankruptcy petition. (Tr.Exh.B).

21. For the calendar year ended December 31, 1996, the year preceding the filing of the bankruptcy petition, the Debtor had total billings of $124,240 [5] (Tr. 1/10/2000 Hrg. at 149; Tr.Exh. B), while for the calendar year ended December 31, 1997, the Debtor had total billings of $133,515,[6] $126,535 of which was attributable to pre-petition accounts (Tr.Exh.B). This was not refuted by the Debtor. Since the Court has found that June 27, 1997 is the appropriate date for valuation of the goodwill and going concern value of Debtor's accounting practice, and the valuation date is virtually half-way through calendar year 1997, the Court has averaged the Debtor's 1996 billings and 1997 billings attributable to pre-petition accounts ($124,240 + $126,535 divided by 2) and determined the annual billings for purposes of valuation to be $125,388 (the "Actual Annual Billings"). The fact that the Debtor has substantially increased the gross revenues of his practice in 1998 and thereafter is not germane to the issue here.

22. The average annual salary of a certified public accountant with sixteen (16) years of experience of practicing on Long Island is $75,000 per annum.

23. After considering the Debtor's testimony regarding the annual expenses of his practice, the Court finds the following to be the actual annual expenses of Debtor's practice:

| | |
|---|---|
| (a) Various software, materials and publication updates [7] | 2,500.00 |
| (b) Office expenses, including copy paper and office supplies | 4,000.00 |
| (c) Automobile lease [8] | 2,184.00 |

---

5. These billings are attributable, in part, to the billings of Essenfeld, Schultz & Co. (Tr. 1/10/2000 Hrg., at 149). However, it appears that the Debtor's billings were attributable to his personal clients, whom he retained when he commenced operating as a solo practitioner, and that Essenfeld's billings were attributable to his personal clients, whom he separately retained after the departure of the Debtor.

6. In 1997, the accounting practice generated $6,980 in new business which was not attributable to pre-petition accounts (Trial Exh. B).

7. Although the Debtor testified that he expended $7,000 for a software program and $2,000 for a general ledger program, these are one-time charges for start-up of his solo practice, and are not actual annual expenses of the practice. The Court has, however, included the cost of updates to these programs as actual annual expenses of the practice.

8. The Debtor testified that he pays $4,368.00 per annum with respect to an automobile lease. Since the Debtor uses the automobile for personal use as well as for business, the Court has included one-half of the annual lease amount as an actual annual expense of the practice.

| | |
|---|---|
| (d) Automobile insurance | 1,200.00 |
| (e) Office telephone | 3,000.00 |
| (f) Cellular telephone | 1,440.00 |
| (g) Malpractice insurance | 1,200.00 |
| (h) Seminar costs | 900.00 |
| (k) Self-employment tax @ 15.3% of the gross ($128,877.50 × 15.3) | 19,718.00 |
| Total | $36,142.00 |

23. After considering the evidence regarding the method of valuing the goodwill and going concern value of the Debtor's accounting practice, the Court finds the following to be the proper application of the formula under the circumstances of this case:

(a) The profits are to be calculated by subtracting from the Debtor's Actual Annual Billings (i) the average annual salary of a certified public accountant with sixteen (16) years of experience operating as a sole practitioner on Long Island; and (ii) the actual annual expenses of the Debtor in operating the accounting practice; and

(b) Multiplying the profits by a multiplier of 1.25.[9]

24. Applying the aforementioned formula, the Court finds that the goodwill and going concern value of the Debtor's accounting practice as of the valuation date was $17,808 ($125,388 − ($75,000 + $36,142) × 1.25).

25. Defendants' affirmative defense of laches is inapplicable in this adversary proceeding.

## DISCUSSION

### I. The Trustee is Entitled to Interest on Accounts Receivable Retained by the Debtor

 Section 541 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

\* \* \*

(6) Proceeds, product, offspring, rents, and/or profits from property of the estate.

11 U.S.C. § 541. It is well settled that the accounts receivable of a debtor as of the Petition Date are property of the estate to which the trustee becomes entitled at the time of filing of the bankruptcy case. *See, e.g., In re Nemko, Inc.,* 143 B.R. 980, 986 (Bankr.E.D.N.Y.1992) ("Under the broad definition of property in Section 541(a) of the Bankruptcy Code, the Debtor's interest in the account receivable is property of the estate."). Section 521 of the Bankruptcy Code requires a debtor to surrender to the trustee any property of the estate that the debtor may have in his possession. 11 U.S.C. § 521(4).

 In the instant case, it is undisputed that the Debtor collected $9,072 of the initially disclosed accounts receivable, which were duly demanded by the Trustee at the meeting of creditors conducted pursuant to 11 U.S.C. § 341(a) on August 13, 1999. Through discovery, the Trustee learned that the Debtor collected an additional $2,350 in pre-petition accounts receivable after the initial disclosure. Thus, the Debtor collected a total of $11,422 in pre-petition accounts receivable, which were required to be turned over to the

---

9. In this connection, the Court notes that, on cross-examination, Spiegel admitted that he did not consider whether a multiplier of 1.5 would be appropriate here or only in a transaction between a cooperative seller (one available for personal introductions and consultation during the transition period) and an independent purchaser (Tr. 11/15/99 Hrg., at 67). Although Spiegel testified that a smooth transition from the seller to the buyer is irrelevant to what multiplier is used to calculate the value of the accounting practice, the Court believes that it is relevant. Furthermore, the Court's experience has been that accounting practices such as the Debtor's, which services individuals and small businesses, are typically valued at 1.00 to 1.25 times average annual billing.

Trustee pursuant to 11 U.S.C. § 521(4), but were not turned over for more than two years after the initial creditors' meeting. Indeed, the Debtor did not surrender the pre-petition accounts receivable collected by him until the Trustee commenced this adversary proceeding. Moreover, the Debtor's only excuse for not turning over the accounts receivable was that he was acting on the advice of counsel, presumably as leverage to force the Trustee to enter into a global settlement of all of the issues presented in this adversary proceeding. The Court frowns on a Debtor refusing to comply with the clear directions of the Bankruptcy Code to surrender property of the estate to the Trustee. Moreover, by wrongfully retaining the funds representing pre-petition accounts receivable for approximately two years, the Debtor deprived the estate of the benefit of the funds, while being unjustly enriched at the estate's expense. Had the accounts receivable been timely turned over to the Trustee as required by Sections 541(a) and 521(4) of the Bankruptcy Code, the estate would have been collecting interest on the funds instead of the Debtor. Consequently, the Trustee is entitled to interest on the accounts receivable at the rate of nine (9%) per annum from the date of their collection by the Debtor.

## II. Estate is to Be Reimbursed for Debtor's Payment of Lisa Bomse's Income Tax Liability

Section 548 of the Bankruptcy Code provides, in pertinent part, as follows:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1). In April 1997, approximately sixty days before the Petition Date, the Debtor issued two checks from his separate checking account in payment of the personal income tax obligations of Lisa Bomse: a check to the Internal Revenue Service for $2,000, and a check to the New York State Department of Taxation & Finance for $1,000. Both the Debtor and Bomse are self-employed professionals engaged in business as an accountant and a psychologist, respectively, who maintain separate checking accounts. The evidence conclusively shows that $825 of the funds expended by the Debtor for Bomse's federal income tax obligation is attributable to self-employment tax with respect to Bomse's professional practice, which is clearly a business expense of Bomse—not the Debtor-and is also not a household expense. Further, the payment of Bomse's business expense was made by the Debtor in April 1997, at a time when Debtor has admitted to being insolvent.[10]

---

10. Pursuant to 11 U.S.C. § 101(32), an entity other than a partnership and a municipality is insolvent when the sum of its debts is greater than all of its property, at fair valuation, exclusive of any property transferred, concealed, or removed with intent to hinder, delay, or defraud creditors, and property that may be exempted from property of the estate.

The Debtor testified that he had insufficient assets in April 1997 to meet his debts, which amounted to over $200,000 (Tr. 1/10/2000 Hrg., at 215–16). Consequently, under the Code's definition, the Debtor was insolvent as of April 1997. The Debtor's petition discloses assets of $29,400.00 and debts of $293,275.33 as of June 27, 1997, which corroborates his

Additionally, the Debtor could not show by any evidence that he received any consideration or benefit for the payment. In view of the foregoing, the Trustee has established his fraudulent conveyance claim under 11 U.S.C. § 548(a)(1)(B).

Alternatively, the transfer on account of Bomse's self-employment tax obligation can be avoided by the Trustee under 11 U.S.C. § 548(a)(1)(A), which is actual intent fraud. Rarely, if ever, is actual intent susceptible to direct proof. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983). Rather, it is generally established by inference from the circumstances surrounding the alleged fraudulent transfer. *ACLI Government Securities, Inc. v. Rhoades*, 653 F.Supp. 1388 (S.D.N.Y.1987). Inter-spousal transfers or transfers made for the benefit of a spouse while the transferor is insolvent invoke "indicia" or "badges" of fraud. *See, e.g., In re Fill*, 82 B.R. 200, 220 (Bankr. S.D.N.Y.1987), *citing Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983); *In re Fill*, 82 B.R. 200 (Bankr. S.D.N.Y.1987). The "badges of fraud" may include (1) lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. *Kaiser*, 722 F.2d at 1582. In this case, four (4) "badges of fraud" are present. The chronology of events indicates that the Debtor transferred funds from his separate checking account in payment of his wife's federal income tax obli-

gation for an expense of her professional practice at a time when he could not pay his own creditors and they were pressing him for payment. Moreover, he received no consideration or benefit of any kind for such payment. After weighing all of the evidence, the Court is of the opinion that the Trustee has made a prima facie case for actual intent fraud under 11 U.S.C. § 548(a)(1)(A), which the defendants have not rebutted.

The defendants argue that the Debtor's payment of Bomse's income tax obligation was not a fraudulent transfer because it was a joint household expense; that the Debtor and Bomse typically share joint household expenses; and that to hold that the payment by the Debtor of Bomse's tax liability would impose the Court into the privacy of a husband and wife's everyday living arrangements. The Court disagrees, since it has been conclusively established that the debt at issue was not a joint household expense, but, rather, a business expense of Bomse's professional practice.

Consequently, the Trustee is entitled to reimbursement of the $825 payment made by the Debtor to the Internal Revenue Service on behalf of Bomse, with interest at nine (9%) per annum from the Petition Date.

### Doctrines of "Collateral Estoppel" or "Law of the Case" Are Unavailable to the Defendants

The Defendants argue that the Trustee is precluded by the doctrines of collateral estoppel or "law of the case" from asserting this fraudulent conveyance claim because the Court has previously passed upon the Debtor's financial dealings with his wife in a prior adversary proceeding entitled *Essenfeld v. Schultz*, Adv.Pro. No. 897–8542–346. In that matter, the Debtor's former business partner alleged

---

testimony. Moreover, the Court (Conrad, J.) has found in another adversary proceeding that the Debtor has no legal or equitable interest in his residence which can be liqui-

dated to pay his creditors, which decision was affirmed on appeal. *See Essenfeld v. Schultz*, 239 B.R. 664 (E.D.N.Y.1999) (Spatt, J.).

nine separate causes of action under 11 U.S.C. § 523(a) and 11 U.S.C. § 727(a). Among other things, the plaintiff in that adversary proceeding alleged that the Debtor's discharge should be denied because he listed as an asset on numerous loan applications certain real property located at 92 Plainview Road, Woodbury, New York (the "Woodbury Property"), but deliberately failed to list that property as an asset in his bankruptcy schedules, which constituted a violation of either 11 U.S.C. § 727(a)(2)(A) or (a)(4). The plaintiff also alleged that Debtor's payment of real estate taxes on the Woodbury Property, which was actually owned by Bomse's parents and jointly occupied by the Debtor and his wife, demonstrated that he had an equitable interest in that property. After the plaintiff presented his case-in-chief, the Court (Conrad, J.) found, among other things, that the Debtor did not have a legal or equitable interest in the Woodbury Property and that he was entitled to a discharge despite his failure to list the Property. The Court then granted a directed verdict in favor of the Debtor dismissing the plaintiff's adversary proceeding in its entirety. That decision was affirmed on appeal. *See Essenfeld v. Schultz (In re Schultz),* 239 B.R. 664 (E.D.N.Y.664) (Spatt, J.).

In support of defendants' argument that the financial dealings between the Debtor and Bomse have already been decided, the defendants cite Judge Conrad's statement on the record that married couples "enter into whatever sharing arrangements they wish to in modern day marriage contracts," and that the fact that the Debtor paid the real estate taxes "does not give him an equitable interest in the house." (Deft's Memo of Law in Opposition to Summary Judgment, at 2–3).[11] In further support of their position, the defendants point to a request made by counsel to the Trustee, who was observing the trial in

*Essenfeld v. Schultz,* that any determination made by Judge Conrad in that action should not be binding upon the Trustee for purposes of *res judicata,* collateral estoppel or judicial estoppel, which request Judge Conrad denied (Tr. 1/10/2000 Hrg. at 190–92). The Court is not persuaded that any decision made in the prior adversary proceeding in regard to the Debtor's "marriage contract" binds the Trustee in this adversary proceeding.

Under New York law, the determination of whether collateral estoppel precludes relitigation of an issue requires the Court to pursue a two-tiered line of inquiry. *Long Island Lighting Co. v. Imo Industries, Inc.,* 6 F.3d 876, 885 (2d Cir. 1993); *C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.,* 903 F.2d 114, 121 (2d Cir.1990), *reh'g denied,* 910 F.2d 33 (2d Cir.1990); *Manhattan King David Restaurant, Inc. v. Levine,* 154 B.R. 423, 428 (S.D.N.Y.1993). First, the Court must determine whether the issue in the instant action is identical to an issue necessarily decided in the first action and decisive of the present action. Second, the Court must determine whether the party sought to be barred has had a full and fair opportunity to contest the prior determination. *See, e.g., In re Landrin,* 173 B.R. 307 (Bankr.S.D.N.Y.1994). Neither of these criteria have been, or can be, satisfied here. First, as discussed above, the issue in the other action involved an objection to discharge rather than a fraudulent conveyance, the expense at issue was the payment of real estate taxes on the house where the couple resides rather than a separate business expense of the Debtor's wife, and the statement by Judge Conrad as to financial dealings between married couples was in the nature of dicta. Second, the case the defendants rely on was an adversary proceeding to which the Trustee was not even a party. Defendants' argument that the Trustee can be bound by a ruling in a case where he was

---

11. The defendants have never proffered to either the Court or opposing counsel a copy of the trial transcript in the matter of *Essenfeld v. Schultz.*

not even a party and where he had no opportunity to be heard, much less a "full and fair opportunity," is unsupported and legally wrong.

▮▮▮▮ The "law of the case" doctrine is that a decision at one stage of a litigation can in the Court's discretion be determined to be binding precedent in following stages of the same litigation or to different lawsuits *between the parties*. *See In re PCH Associates*, 949 F.2d 585, 592 (2d Cir.1991). However, the law of the case doctrine is inapplicable to the instant action. This is not the same litigation or a different litigation between the same parties.

Consequently, it is clear that the doctrines of collateral estoppel and law of the case are unavailable to the defendants.

### III. Value of the Estate's Interest in Debtor's Accounting Practice

▮▮▮▮ Pursuant to Section 541(a)(1) of the Bankruptcy Code, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), as well as "proceeds, product, offspring, rents, or profits of or from property of the estate," 11 U.S.C. § 541(a)(6). Although 11 U.S.C. § 541(a) is construed broadly and pulls virtually all of a debtor's property interests into the bankruptcy estate, subsection (a)(6) specifically excludes "earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). This exclusion applies in Chapter 7 cases. *See In re Prince*, 85 F.3d 314, 321 (7th Cir. 1996), *rehearing en banc denied* July 9, 1996, *cert. denied, Prince v. Unsecured Creditors Committee*, 519 U.S. 1040, 117 S.Ct. 608, 136 L.Ed.2d 534 (1996); *Fitz-Simmons v. Walsh (In re FitzSimmons)*, 725 F.2d 1208, 1211 (9th Cir.1984). Thus, a debtor's post-petition earnings are not part of the bankruptcy estate. However, the value of a professional practice owned by a debtor as of the commencement of a bankruptcy case is attributable to many different assets; e.g., some of its value flows from the practice's physical assets, such as equipment; some of the practice's future cash flow may be attributable to the professional's human capital, such as his skills and labor; and some of its value may derive from the practice's intangible assets, such as goodwill. *See Prince*, 85 F.3d at 321. Goodwill includes the practice's name recognition, consumer brand loyalty, or special relationships with suppliers or clients. Additionally, it is settled law in New York that professional goodwill, which is comprised of other than personal attributes of a professional person, such as continuity of location and continuity of the name of a professional practice, is a saleable asset which attaches to the place, not the person, and survives even the death of that professional person. *See Spaulding v. Benenati*, 57 N.Y.2d 418, 456 N.Y.S.2d 733, 442 N.E.2d 1244 (N.Y.1982). Consequently, this Court holds that the goodwill and going concern value of the accounting practice retained by the Debtor after the Petition Date are assets of the estate which must be evaluated.

▮▮▮▮ At the same time, the Court acknowledges that to have any significant value, an accounting practice, or for that matter any professional practice, would have to be sold and the seller would have to agree not to compete for a reasonable time in the future. *See Robertson v. Swanson (In re Swanson)*, 36 B.R. 99, 100 (9th Cir. BAP 1984). To accommodate these two different and seemingly contradictory principles, the Court has had to fashion an appropriate methodology for valuing the goodwill and going concern value of the Debtor's accounting practice, without valuing its sale value to a third party. Hence the Court holds that the appropriate valuation under the circumstances presented in this case is the value of the goodwill and going concern of this particular professional practice to this particular Debtor as of the Petition Date, as modified by the Court's consideration of its value to a third party without a contract not to

compete. This enables the estate to recoup the benefit to this Debtor continuing to service his pre-petition accounting clients at this location, without interruption, using the same location, telephone number, and other assets pursuant to previous fee agreements. *Accord In re Prince*, 85 F.3d 314 (7th Cir.1996), *rehearing en banc denied* July 9, 1996, *cert. denied, Prince v. Unsecured Creditors Committee*, 519 U.S. 1040, 117 S.Ct. 608, 136 L.Ed.2d 534 (1996); *FitzSimmons v. Walsh (In re FitzSimmons)*, 725 F.2d 1208 (9th Cir.1984); *In re Thomas*, 231 B.R. 581 (Bankr.E.D.Pa.1999), *aff'd* 246 B.R. 500 (E.D.Pa.2000).

In *FitzSimmons*, the court held that the post-petition income of an attorney practicing as a sole proprietor could be divided between income received as a direct result of his personal services and income attributable to the firm's invested capital, accounts receivable, goodwill, employment contracts with the firm's staff, client relationships, fee agreements or the like; and that the income attributable to the latter accrued to the chapter 11 estate. In *Prince*, in the context of confirming a chapter 11 reorganization plan which required the debtor to pay creditors the equity value of his orthodontist practice, the court determined that the equity value of the stock had to include the corporation's goodwill and going concern value and rejected all of the debtor's arguments to the contrary.[12] In *Thomas*, the court adopted the principles enunciated in *FitzSimmons* and *Prince* and held that the goodwill and going concern value of a chapter 13 debtor's courier service were rooted in his pre-petition efforts to develop a rapport with customers and build his business and, consequently, the debtor's

assertion that the company's future earnings represented a purely post-petition asset was faulty to the extent that it overlooked the pre-petition effort that went into the creation of the business and its post-petition goodwill with customers. Consequently, the *Thomas* court held that the goodwill of Thomas' courier service was an asset separate from income derived from his personal services. *Id.*, at 587. *FitzSimmons, Prince* and *Thomas* are all in accord with this Court's decision, that the goodwill of Debtor's accounting practice is an asset of the estate separate from whatever income he may receive or his personal services based on his relationship to past events.

■ The Court acknowledges that *FitzSimmons, Prince* and *Thomas* all concern debtors who filed reorganization cases, whereas the case at bar concerns a chapter 7 debtor who is entitled to a fresh start after being discharged of his debts. The Debtor argues that this situation is distinguishable from *Prince* and *Thomas* because (i) the Debtor, who operates a solo practice, is not a separate and distinct entity from his professional practice and, therefore, there is no "business" goodwill to be sold; and (iii) the transaction contemplated by this adversary proceeding is really the Trustee's offer to sell the estate's interest in the practice (whatever it is) back to the Debtor, rather than the Debtor's offer to purchase his own practice back from the creditors (Defts' Proposed Findings of Fact and Conclusions of Law, at 11–13). The Debtor further argues that the Trustee can either sell the asset to a third party or abandon it, but he cannot force the Debtor to pay for it (Defts' Proposed Findings of act and Conclusions of

---

**12.** The *FitzSimmons* distinction between "personal" and "business" goodwill was criticized in *In re Cooley*, 87 B.R. 432, 442 (Bankr.S.D.Tex.1988). That case involved the value to the chapter 11 estate of the goodwill of an individual debtor's surgical practice operated as a sole proprietorship, which generated substantial revenue because Dr. Cooley was a renown heart surgeon. Like the debt-

ors in *FitzSimmons* and *Prince,* Dr. Cooley sought to exclude all post-petition earnings derived from the sole proprietorship. The *Cooley* court concluded that Dr. Cooley's personal goodwill was inextricably bound up with his personal services and did not by operation of 11 U.S.C. § 541(a)(6) become property of the estate.

Law, at 13). However, that argument does not address the fact that, even in the context of chapter 7, the Debtor's post-petition income from pre-petition accounts (which amounted to approximately ninety (90%) percent of his Actual Annual Billings for 1997) is directly attributable to the fact that the Debtor was able to maintain the goodwill of the practice and continue to conduct his business, uninterrupted, at the same place, with the same equipment, telephone number and stationery, even after a bankruptcy filing. In view of the foregoing, the Debtor is constrained from arguing that the goodwill and going concern value of the practice have no intrinsic value. Moreover, in determining the value thereof, the Court has subtracted from Actual Annual Billings the Debtor's actual annual expenses of doing business and the average annual salary of a certified public accountant with the Debtor's experience doing business on Long Island as a sole practitioner and then multiplied the result by a factor of 1.25, which the Court has determined to be appropriate in this case. The Court believes that this methodology takes into account the estate's property interest in the goodwill and going concern value of the accounting practice, without affecting his income from personal services, while also affording the Debtor a fresh start.

 Spiegel testified that accounting firms typically bill one-third (1/3) to cover salaries, one-third (1/3) to cover overhead, and one-third (1/3) for profit. Based upon Spiegel's rule of thumb analysis, the Trustee would provide the Debtor with an annual income of only $53,000 per year from his accounting practice and a decrease in the value of Debtor's expenses due to his practice at home, resulting in a larger percent of profit which is to be calculated at a higher percentage valuation. This Court disagrees. If the Debtor is paid as an employee based on his sixteen years of experience and ability to retain repeat business clients, his salary would be at least $75,000 per year. The Debtor should not be penalized by a reduction of wages based solely upon Spiegel's rule of thumb. Neither should the Debtor be permitted to reduce gross revenues by hypothetical expenses, such as what it would cost to hire an additional employee to perform the services currently donated by the Debtor's family members. Additionally, the Court has determined that the Petition Date is the appropriate valuation date, and, therefore, rejects (a) the Trustee's contention that Actual Annual Billings—the beginning point of the calculation—should be based only on post-petition revenues and (b) the Debtor's contention that Actual Annual Billings should be based on the Debtor's 1996 revenues. Accordingly, as indicated above, the Court has calculated valuation as of June 27, 1997 by averaging the Debtor's annual billings for the year ended December 31, 1996 and that portion of the Debtor's annual billings for the year ended December 31, 1997 that are attributable to pre-petition accounts.

Based on the methodology employed by the Court, the estate's interest in the goodwill and going concern value of the accounting practice retained by the Debtor is $17,808. In the event the Debtor is unable to make a lump-sum payment in the entire amount to the Trustee, upon proper application, the Court may consider a payout arrangement with respect thereto.

The Court further believes that there is an intangible value to the Debtor personally in retaining his business post-petition, since the Debtor gets to retain all of the practice's assets, which he can sell at a future date without having to reinvest in new premises and without having to outfit new offices, purchase new equipment, obtain a new telephone number or re-establish his reputation in a new venture.

### The Defense of Laches is Unavailable to the Defendants

 Laches is an equitable doctrine which bars the assertion of a claim because of an unreasonable delay by a party which prejudices the other party. *In re Coffee*

*Cupboard, Inc.,* 118 B.R. 197, 200 (Bankr. E.D.N.Y.1990). An equitable action is ,barred by laches under New York law where the following exist: (1) proof of delay in asserting a claim despite the opportunity to do so; (2) lack of knowledge on the defendant's part that a claim would be asserted; and (3) prejudice to the defendant by the allowance of the claim. *Rapf v. Suffolk County of New York,* 755 F.2d 282, 292 (2d Cir.1985). In order to show that he has been prejudiced, a defendant must show reliance and change of position resulting from the delay. *Rapf,* 755 F.2d at 292.

■ In this case, the Trustee did not take any action to pursue the estate's claim for the goodwill and going concern value of Debtor's accounting practice from August 13, 1997 (the date of the creditors' meeting) until February 10, 1998 (the date the Trustee's accountant was retained). After retention, the Trustee's accountant conducted an investigation of the Debtor's financial condition, including his business affairs, and reported his findings to the Trustee, which resulted in the Trustee commencing this adversary proceeding on November 16, 1998. Although this action was not commenced for fifteen (15) months after the first meeting of creditors, such time frame is not inconsistent with the Trustee's duty under 11 U.S.C. § 704(1) to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of parties in interest. Moreover, the Debtor and his counsel were on notice that the Trustee was analyzing the value of the accounting practice as early as February 19, 1998, when a written demand was made for documents regarding the practice, including a listing of the client base as of the Petition Date, together with an indication of the hours worked and fees charged to them during the preceding two years.

The Debtor testified that he would be prejudiced by having to pay the Trustee for the estate's interest in the goodwill and going concern value of the accounting practice; however, he has not demonstrated such prejudice to the Court's satisfaction. Neither has he shown reliance or a change of position resulting from the delay. It is possible that, had the Debtor known in August 1997 that the Trustee would assert this claim, the Debtor may have decided to seek employment at another accounting firm where he may or may not have earned a larger salary. However, he did not do so. On the contrary, the Debtor continued to do business at the same location with the same accounting clients under the same fee arrangements. By staying at the same location and working with the same client base, the Debtor was able post-petition to recruit new clients, enlarge his practice and increase his revenues. Since no value has been placed on any income or earnings post-petition, the Debtor is not harmed. The Debtor has had the benefit of the use of this asset for this period of time and not adversely affected by this decision. By refusing for two years to turn over to the Trustee the pre-petition accounts receivable which were property of the estate, the Debtor's working capital was enhanced and his cash flow improved. Thus, the delay conferred a benefit on the Debtor and did not prejudice the Debtor.

In view of the foregoing, the doctrine of laches is not available to the Debtor in this adversary proceeding.

### CONCLUSION

1. Pursuant to 11 U.S.C. §§ 521(4) and 541(a), the pre-petition accounts receivable of Debtor's accounting practice are property of the estate which were required to be surrendered to the Trustee. The pre-petition accounts receivable were wrongfully retained by the Debtor to his own benefit and to the detriment of the estate and, therefore, the Trustee is entitled to interest at the rate of nine (9%) percent per annum on such pre-petition accounts receivable, which is payable from the date of collection by the Debtor to the date of turnover to the Trustee.

2. The pre-petition transfer of $825.00 made by the Debtor to the Internal Revenue Service on behalf of Lisa Bomse's self-employment tax obligation is a fraudulent conveyance which may be avoided by the Trustee pursuant to 11 U.S.C. § 548(a)(1)(A) and (B), and the Trustee is entitled to judgment against the defendants in the amount of $825.00, plus nine (9%) interest from the Petition Date.

3. The goodwill and going concern value of the accounting practice operated, uninterrupted, by the Debtor as a sole proprietorship since the Petition Date is property of the estate pursuant to 11 U.S.C. § 541(a)(1) and (a)(6), and is separate and distinct from the personal earnings attributable to the Debtor by virtue of his skill, expertise and labor. The appropriate valuation under the circumstances presented in this case is the value due to the Debtor's estate from this particular accounting practice, rather than its value, if sold, to an independent purchaser at fair market value.

4. The estate's interest in the goodwill and going concern value of the accounting practice retained by the Debtor is $17,808, and the Trustee is entitled to judgment against Norman Schultz in such amount, without interest. In the event the Debtor is unable to make a lump-sum payment of the entire amount to the Trustee, upon proper application, the Court may consider a payout arrangement of said sum.

The Trustee shall settle an Order in accordance with this decision on seven (7) days notice.